# EXHIBIT 1

IN THE CIRCUIT COURT OF THE
17th JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

VITAL PHARMACEUTICALS, INC.,
d/b/a VPX and as BANG ENERGY, a
Florida corporation,

    Plaintiff,

vs.

**COMPLAINT FOR DAMAGES**

BALL METAL BEVERAGE CONTAINER
CORP. d/b/a BALL METAL, a Colorado
Corporation,

    Defendant.
_____/

    Plaintiff, Vital Pharmaceuticals, Inc. d/b/a VPX and as Bang Energy, a Florida corporation ("Bang Energy"), hereby brings this action against Defendant, Ball Metal Beverage Container Corp. d/b/a Ball Metal, a Colorado corporation ("Ball"), and states:

## PARTIES, JURISDICTION AND VENUE

    1.    This is an action for damages in excess of $30,000, exclusive of interest, costs and attorneys' fees, and is within the jurisdiction of this Court.

    2.    Bang Energy is a Florida corporation organized and existing under the laws of the State of Florida, with its principal place of business located in Broward County, Florida.

    3.    Ball is a Colorado corporation organized and existing under the laws of the State of Colorado, with its principal place of business located in Broomfield County, Colorado.

    4.    This Court has personal jurisdiction over Ball pursuant to Florida Statutes Section 48.193(1)(a) because the causes of action asserted herein arises from one or more of Ball's acts in:

    a. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in Florida;

    b. Committing a tortious act within this state;

    c. Causing injury property within this state arising out of an act or omission by the defendant outside this state, while, at or about the time of the injury, and while Ball: (i) engaged in solicitations or service activities within this State and/or (b) products materials, or things processed, service or manufactured by Ball were used or consumed within this state in the ordinary course of commerce, trade or use; and/or

    d. Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.

5.    Alternatively, the Court has personal jurisdiction over Ball pursuant to Florida Statutes Section 48.193(2) because Ball is engaged in substantial and not isolated activity within this state.

6.    Ball is also registered to do business within the State of Florida, and has a registered agent with an office in Broward County, Florida.

7.    Venue is proper in this Court under Florida Statutes Sections 47.011 and 47.051 because: (i) the causes of action asserted herein arose in Broward County, Florida and/or (ii) Ball resides in Broward County, Florida for purposes thereof, as it has a registered agent located in Broward County, Florida.

## GENERAL ALLEGATIONS

8. Bang Energy is a manufacturer and seller of dietary supplements and beverages, including, but not limited to, its marquis Bang® carbonated energy drink product ("Bang®").

9. Ball is a manufacturer and supplier of aluminum cans for beverages, which Ball sells to manufacturers, vendors and other suppliers of consumer beverages, such as Bang Energy.

10. To contain beverage products without internal corrosion and resultant leaking, aluminum cans must be treated with an internal liner that forms a protective barrier between the beverage contents and the metal itself.

11. Ball manufactures and sells its aluminum cans with such internal liners that it designs, creates and/or applies.

12. Without such a liner—or with a defective, deficiently formulated or misapplied liner—a filled can's aluminum interior is unduly and unreasonably vulnerable to corrosion from the beverage contents, a/k/a "primary corrosion."

13. Primary corrosion unduly and unreasonably renders cans vulnerable to leaking, and thus makes the beverage product unsaleable.

14. Further, when filled beverage cans are packed together, such as cans packed atop a warehouse pallet, fluid issuing from any can due to primary corrosion, can cause external corrosion to adjacent cans, a/k/a "secondary corrosion."

15. Secondary corrosion also renders beverage products contained within the proximate area of any leaking adjacent cans unsaleable.

16. Over a period of years, Bang Energy has purchased hundreds of millions of aluminum cans from Ball for Bang Energy's use in the production and sale of its various consumer beverage products, including, but not limited to Bang®.

3

17. On or about November 15, 2017, Ball crafted and issued certain Terms and Conditions purporting to govern its sales of lined aluminum cans to Bang Energy, which Terms and Conditions Bang Energy signed at Ball's instance ("Terms and Conditions").[1]

18. Ball prepared and drafted the Terms and Conditions.

19. Ball expressly warranted that the cans and their components would be free from defects in material, would be free from defects in workmanship, and would conform to the pertinent specifications.

20. In 2018, Ball switched the nature of the lining, treating the cans with a certain "BPA-NI" liner.

21. The formulation and/or application of the "BPA-NI" liner turned out to be deficient in that it left the interior of the cans, once filled, unduly and unreasonably vulnerable to primary corrosion, thus rendering the cans nonconforming, defective and, once filled, unreasonably dangerous.

22. Indeed, a number of defective Ball cans leaked due to primary corrosion after being filled with Bang Energy's products, and furthermore, rendered other cans exposed to secondary corrosion.

23. As a result of the nonconforming, defective and unreasonably dangerous condition of the cans, Bang Energy has been forced, over time, to replace in excess of 100,000,000 cans, including those that: (a) were filled with Bang Energy's products and leaked due to primary corrosion; (b) were filled with Bang Energy's products that had been exposed to potential secondary corrosion or that suffered secondary corrosion; (c) were filled with Bang Energy's

---

[1] Ball marked the Terms and Conditions confidential. Accordingly, Bang Energy does not attach that document, but will file it under seal after obtaining court leave to do so.

products that had not yet leaked, but were subject to potential (and may have already started to develop) primary corrosion; and (d) were unfilled, but nevertheless determined to be defective because of the risk that if they were filled, they would leak as a result of the defective lining.

24.     As a result of Ball selling and supplying Bang Energy the defective cans in a nonconforming, defective and unreasonably dangerous condition, Bang Energy has incurred many millions of dollars in pecuniary harm and losses.  Bang Energy's losses include, but are not limited to, costs associated with: (a)  acquiring and refilling new beverage cans to replace Ball's defective and unreasonably dangerous cans containing Bang Energy's products that leaked due to primary corrosion; (b) acquiring and refilling new beverage cans to replace Ball's cans filled with Bang Energy's products that had been exposed to secondary corrosion; (c) acquiring and refilling new beverage cans to replace Ball's defective and unreasonably dangerous cans containing Bang Energy beverage product that had not yet leaked, but could not be sold due to concerns over potential primary corrosion; (d)  acquiring new beverage cans to replace Ball's cans that were never filled, but were unusable due to the potential for primary corrosion; (e) logistical costs associated with dealing with millions of defective and unreasonably dangerous cans; (f) reshipping and return shipping; (g) redistributing replacement cans; (h) downtime charges imposed by Bang Energy's co-packers due to not having sufficient cans available to fill; (i) injury to Bang Energy's goodwill with its co-packers; (j) impairment of Bang Energy's business and customer goodwill; and (k) lost profits on lost sales.

25.     To date, Ball has wrongfully refused to acknowledge responsibility for supplying the defective cans to Bang Energy.

26.     Any and all conditions precedent to Bang Energy bringing this action have occurred, have been met, have been excused or are otherwise waived.

## COUNT I
## BREACH OF CONTRACT

27.     Bang Energy incorporates and realleges each and all of the allegations set forth in Paragraphs 1-26 hereinabove, as if set forth fully within this Count.

28.     In connection with each purchase and supply of the beverage cans that are the subject of this action, Ball and Bang Energy entered into a contract for the sale of goods, which required Ball to supply Bang Energy with aluminum cans that were not unduly and unreasonably vulnerable to primary corrosion and resultant harm and loss.

29.     Ball breached said contractual obligation by delivering to Bang Energy the defective cans.

30.     As a direct, proximate and natural occurring result of Ball's breach of contract with respect to the defective cans, Bang Energy suffered harm and loss.

WHEREFORE, Bang Energy demands judgment against Ball awarding damages, interest and costs, and granting any other and additional relief the Court may deem just and appropriate.

## COUNT II
## BREACH OF EXPRESS WARRANTY

31.     Bang Energy incorporates and realleges each and all of the allegations set forth in Paragraphs 1-26 hereinabove, as if set forth fully within this Count.

32.     Pursuant to the Terms and Conditions, Ball expressly warranted that the cans it sold and supplied to Bang Energy were free from defects in material and workmanship and conformed to Ball's specifications.

33. Ball knew that Bang Energy was purchasing the cans for use in its energy drink products.

34. Bang Energy relied upon the warranties, to its detriment, in purchasing cans from Ball.

35. The cans were not free from defect in material, not free from defect in workmanship, were nonconforming, and were otherwise unreasonably dangerous.

36. As a direct and proximate result of Ball's breach of warranty with respect to the defective cans, Bang Energy suffered harm and loss.

WHEREFORE, Bang Energy demands judgment against Ball awarding damages, interest and costs and granting any other and additional relief the Court may deem just and appropriate.

## COUNT III
## NEGLIGENCE

37. Bang Energy incorporates and realleges each and all of the allegations set forth in Paragraphs 1-26 hereinabove, as if set forth fully within this Count.

38. At all times material hereto, Ball was in the business of designing, manufacturing, producing, selling and/or supplying aluminum cans to beverage companies such as Bang Energy.

39. At all times material hereto, Ball owed purchasers of its cans, including Bang Energy, a duty to take reasonable and otherwise due care in connection with its manufacturing, producing, selling and/or supplying cans so as to ensure that its cans were free of defect and not unreasonably dangerous to persons or other property.

40. Ball breached said duty of reasonable and otherwise due care, in connection with the defective cans that it sold and supplied to Bang Energy in one or more of the following respects:

      a.    Ball negligently manufactured or produced the defective cans, so as to render them unduly and unreasonably vulnerable to primary corrosion by using a "BPA-NI" liner having a formulation that was inadequate to provide the defective cans with requisite protection;

      b.    Ball negligently manufactured and/or produced the defective cans, so as to render them unduly and unreasonably vulnerable to primary corrosion by applying or misapplying a "BPA-NI" liner in a manner that was inadequate to provide the defective cans with requisite protection;

      c.    Ball negligently designed the defective cans, so as to render them unduly and unreasonably vulnerable to primary corrosion, by using a "BPA-NI" liner having a formulation that was inadequate to provide the defective cans with requisite protection; and/or

      d.    Ball otherwise was negligent in supplying cans that failed to meet the industry standard, in that such cans were inadequately protected from, and unduly and unreasonably vulnerable to, primary corrosion or otherwise leaking.

41. As a direct and proximate result of Ball's actions and/or inactions, Bang Energy's property, including, but not limited to, the cans that it had purchased and their contents, were damaged, injured and/or lost.

42. As a further direct and proximate result of negligence with respect to the defective cans, Bang Energy suffered harm and loss.

WHEREFORE, Bang Energy demands judgment against Ball awarding damages, interest and costs and granting any other and additional relief the Court may deem just and appropriate.

## COUNT IV
## STRICT PRODUCT LIABILITY

43. Bang Energy incorporates and realleges each and all of the allegations set forth in Paragraphs 1-26 hereinabove, as if set forth fully within this Count.

44. At all times material hereto, Ball was in the business of designing, manufacturing, producing, selling and/or supplying aluminum cans to beverage companies such as Bang Energy.

45. At the time that Ball supplied the defective cans to Bang Energy, they were in a defective and unreasonably dangerous condition in that they had been treated with a defectively designed, defectively formulated, or defectively applied "BPA-NI" liner that rendered them unduly and unreasonably vulnerable to primary corrosion.

46. Bang Energy used defective cans that Ball supplied by filling them with its beverage product.

47. As a direct and proximate result of the defective and unreasonably dangerous condition of Ball's cans, Bang Energy's property was damaged, injured and/or lost—including, but not limited to, the cans that it had purchased and their contents.

WHEREFORE, Bang Energy demands judgment against Ball awarding damages, interest and costs and granting any other and additional relief the Court may deem just and appropriate.

## COUNT V
## PROMISSORY ESTOPPEL

48. Bang Energy incorporates and realleges each and all of the allegations set forth in Paragraphs 1-26 hereinabove, as if set forth fully within this Count.

49. At all times material hereto, Ball was in the business of designing, manufacturing, producing, selling and/or supplying aluminum cans to beverage companies such as Bang Energy.

50. Ball explicitly promised Bang Energy that it would supply cans for use in Bang Energy's products that would adequately hold the liquid energy drink contents for Bang Energy's sales into the market.

51. Ball's promise was clear, definite, and unequivocal, and was specifically made to induce Bang Energy to agree to purchase, and actually purchase, cans from Ball.

52. In reliance on the promise, and to its detriment, Bang Energy purchased the cans from Ball.

53. Despite Bang Energy's repeated requests and demands relating to cans that suffered primary corrosion, were exposed to secondary corrosion, and otherwise were unusable due to potentially being subject to primary corrode, Ball has refused or has been unable to correct its issues with the liner.

54. To avoid injustice, it is necessary to enforce the promise made by Ball to Bang Energy, and require Ball to pay for all damages arising out of its failure to abide by its promises.

WHEREFORE, Bang Energy demands judgment against Ball awarding damages, interest and costs and granting any other and additional relief the Court may deem just and appropriate.

## COUNT VI
## COMMON LAW INDEMNIFICATION

55. Bang Energy incorporates and realleges each and all of the allegations set forth in Paragraphs 1-26 hereinabove, as if set forth fully within this Count.

56. Bang Energy incurred expense and costs under various agreements with its co-packers that required Bang Energy to supply the co-packers with sufficient numbers of aluminum cans sufficient to meet required threshold amounts.

57. Bang energy was unable to meet the threshold amounts due to the issues relating to Ball's defective and unreasonably safe cans.

58. Bang Energy is completely without fault, meanwhile its undersupply of cans was caused solely by the actions and/or inactions Ball.

WHEREFORE, Bang Energy demands judgment against Ball awarding damages, interest and costs and granting any other and additional relief the Court may deem just and appropriate.

### DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Dated October 14, 2020

Respectfully submitted by:

/s/   Scott D. Knapp
Scott D. Knapp
Florida Bar No. 016688
William E. Baldwin
Florida Bar No. 118072
Nelson Mullins Broad and Cassel
100 S.E. Third Avenue, Suite 2700
Fort Lauderdale, Florida 33394
Phone: (954)764-7060 / Fax: (954)761-8135
Scott.Knapp@NelsonMullins.com
William.Baldwin@NelsonMullins.com
Traci.Lewis@NelsonMullins.com

*Counsel for Vital Pharmaceuticals, Inc. d/b/a Bang Energy*